ACCEPTED
15-25-00014-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/29/2025 7:05 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00014-CV

## In the Court of Appeals
## for the Fifteenth District of Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/29/2025 7:05:49 PM
CHRISTOPHER A. PRINE
Clerk

### Blackstone Holdings III LP, *et al.*,

*Appellants,*

**v.**

### Primexx Energy Opportunity Fund LP, *et al.*,

*Appellees.*

---

### Appeal from the Texas Business Court, First Division
Dallas County, Texas
Honorable Bill Whitehill

---

### BRIEF FOR APPELLEES

### ORAL ARGUMENT REQUESTED

---

**SUSMAN GODFREY L.L.P.**

Stephen Shackelford, Jr.
State Bar No. 24062998 (TX)
sshackelford@susmangodfrey.com
1000 Louisiana Street, Ste 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Pro hac vice forthcoming*:

Marc M. Seltzer
mseltzer@susmangodfrey.com
Bryan Caforio
bcaforio@susmangodfrey.com
Lindsey Godfrey Eccles
leccles@susmangodfrey.com
Sarah Hannigan
shannigan@susmangodfrey.com

*Attorneys for Appellees*

# Table of Contents

TABLE OF CONTENTS..........................................................................II

INDEX OF AUTHORITIES ..................................................... III

ISSUES PRESENTED.......................................................................1

STATEMENT OF FACTS ...............................................................2

ARGUMENT ......................................................................................8

I.    THE BUSINESS COURT PROPERLY APPLIED RULE 120A TO EVALUATE APPELLANTS' CONSENT TO JURISDICTION .............................................11

   A.    The plain terms of Rule 120a include predecessor proceedings in the same dispute. ...................................................................12

   B.    Appellants waived their challenge to personal jurisdiction when they filed answers and moved to dismiss in the Original Action without entering special appearances. ...........................................16

   C.    The dismissal of the Dallas proceeding does not reverse Appellants' consent to personal jurisdiction in Texas......................20

   D.    Public policy favors affirmance to prevent litigants who consented to jurisdiction in the same dispute from later evading the jurisdiction of Texas courts. ..........................................................22

II.    APPELLANTS ARE ESTOPPED FROM REVERSING THEIR POSITION ON JURISDICTION .................................................................................25

III.   THE FACTUAL RECORD SHOWS APPELLANTS' SUBSTANTIAL CONTACTS WITH TEXAS.................................................................29

CONCLUSION.................................................................................34

# Index of Authorities

**Cases**                                                      **Page(s)**

*BMC Software Belgium, N.V. v. Marchand,*
83 S.W.3d 789 (Tex. 2002) ............................................................... 30

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ............................................................... 17, 25, 32

*Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n,*
518 S.W.3d 318 (Tex. 2017) ............................................................. 16

*Carlile Bancshares, Inc. v. Armstrong,*
No. 02-14-00014-CV, 2014 WL 3891658 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) ............................................................. 33

*City of San Antonio v. Hardee,*
70 S.W.3d 207 (Tex. App.—San Antonio 2001, no pet.) .................... 26

*Exito Elecs. Co., Ltd. v. Trejo,*
142 S.W.3d 302 (Tex. 2004) ............................................................. 18

*Ford Motor Co. v. Cejas*
No. 09-16-00280-CV, 2018 WL 1003791 (Tex. App.—Beaumont Feb. 22, 2018, no pet.) .............................................. 19, 20

*George Fleming & Fleming & Associates, L.L.P. v. Wilson,*
694 S.W.3d 186 (Tex. 2024), *reh'g denied* (Aug. 30, 2024)
............................................................................. 21, 25, 28, 29

*Glencoe Capital Partners II, L.P. v. Gernsbacher,*
269 S.W.3d 157 (Tex. App.—Fort Worth 2008, no pet.).................... 32

*In re Bridgestone Americas Tire Operations, LLC,*
459 S.W.3d 565 (Tex. 2015) ............................................................. 16

*In re Estate of Washington,*
262 S.W.3d 903 (Tex. App.—Texarkana 2008, no pet.) ..................... 23

*M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.,*
512 S.W.3d 878 (Tex. 2017) ....................................................... 30

*Massachusetts Bay Company v. Adkins*
615 S.W.3d 580 (Tex. App.—Houston [1st Dist.] 2020, no
pet.) ........................................................................ 13, 14, 15

*Michiana Easy Livin' Country, Inc. v. Holten,*
168 S.W.3d 777 (Tex. 2005) ....................................................... 26

*Nationwide Distribution Services, Inc. v. Jones,*
496 S.W.3d 221 (Tex. App.—Houston [1st Dist.] 2016, no
pet.) ..................................................................................... 17

*Retamco Operating, Inc. v. Republic Drilling Co.,*
278 S.W.3d 333 (Tex. 2009) ................................................ 30, 32, 33

*Rodriguez v. Marcus,*
564 S.W.3d 216 (Tex. App.—El Paso 2018, no pet.)........................... 17

*RSR Corp. v. Siegmund,*
309 S.W.3d 686 (Tex. App.—Dallas 2010, no pet.) ........................ 7, 17

*Rush v. Barrios,*
56 S.W.3d 88 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied)................................................................... 13, 21, 22

*Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC,*
381 S.W.3d 465 (Tex. 2012) ....................................................... 23

*TGS-NOPEC Geophysical Co. v. Combs,*
340 S.W.3d 432 (Tex. 2011) ....................................................... 16

*Upjohn Co. v. U.S.,*
449 U.S. 383 (1981)................................................................ 24

*Vogel v. Travelers Indem. Co.,*
966 S.W.2d 748 (Tex. App.—San Antonio 1998, no pet.).................... 20

*W. Techs., Inc. v. Omnivations II, L.L.C.*,
   583 S.W.3d 786 (Tex. App.—El Paso 2019, no pet.)...........................27

*Walden v. Fiore*,
   571 U.S. 277 (2014)...........................................................................30

*Waterman Steamship Corp. v. Ruiz*
   355 S.W.3d 387 (Tex. App.—Houston [1st Dist.] 2011, pet.
   denied)................................................................................... 18, 19

*Winnsboro Auto Ventures, LLC v. Santander Consumer USA,
   Inc.*,
   No. 05-17-00895-CV, 2018 WL 1870771, at *7 (Tex. App.-
   Dallas Apr. 19, 2018, no pet.) ........................................................25

## Rules

Rule 120a.................................................................................. *passim*

## Issues Presented

1.        Appellants consented to personal jurisdiction in Texas by filing answers and a motion to dismiss in a "virtually identical" Original Action—without filing special appearances. Did Appellants waive their personal jurisdiction challenge in the Business Court Action, which involves the same allegations and claims against Appellants arising from the same disputed transaction?

2.        Appellants argued in the Original Action that the Texas federal forum-selection clause applied to them, and achieved dismissal on that basis. Parties that agree to a Texas forum-selection clause consent to personal jurisdiction in Texas. Are Appellants estopped from now taking the exact opposite position in the Business Court Action?

3.        Appellants invested in the Texas partnership at issue and/or received hundreds of millions of dollars in shares from the sale of the partnership's Texas oil assets to another Texas company. Do Appellants have minimum contacts with Texas to establish personal jurisdiction?

## Statement of Facts

Appellees were minority investors in Primexx, a successful oil company operating in the Delaware Basin.[1] Blackstone Inc., one of the world's largest private equity firms, became the majority owner of Primexx through its subsidiaries BPP HoldCo LLC and Appellants.[2] Each Appellant is a Blackstone Inc. subsidiary that is the sole member, managing member, or general partner of the subsidiary below, ending with BPP HoldCo LLC, the Blackstone operating company for the Primexx investment.[3]

In June 2021, an independent third-party valuation firm valued Primexx Energy Partners at $1.43 billion, making Appellees' investments worth more than $200 million.[4] Blackstone, however, pushed through a firesale of Primexx's Texas-based real assets to serve its own corporate agenda.[5] After receiving a series of lowball offers from Callon Petroleum Company that the Primexx CEO himself called far too low, Blackstone informed the Primexx Board of Directors on July 30,

---

[1] CR0004.
[2] CR0004–05.
[3] CR0011.
[4] CR0005.
[5] CR0028–29.

2021, that it was planning to sell Primexx to Callon for less than half of Primexx's recently-appraised value.[6] Blackstone thereafter executed a forced drag-along transaction—it informed the Board on a Friday and demanded that the directors approve the sale the next business day.[7] Blackstone controlled five of the nine seats on the Board, which approved the sale on August 2.[8] Appellants received hundreds of millions in proceeds, but Appellees' $200 million investment was almost completely wiped out.[9]

Appellees filed suit against Appellants, BPP HoldCo LLC, Primexx Energy Corporation, and M. Christopher Doyle in Dallas county in December 2022 (the "Original Action").[10] Appellants filed answers and moved to dismiss based on a forum-selection clause in the Partnership Agreement at issue, which specified the federal court located in Dallas, Texas.[11] No Appellant filed a special appearance.[12] Instead, in their

---

[6] CR0005.
[7] CR005–06.
[8] CR0006.
[9] CR0006; CR0475–549.
[10] CR1049.
[11] CR1049. Appellees first filed in state court, not federal court, because there is no federal subject matter jurisdiction. Appellees' claims arise under Texas law. Appellants are citizens of at least Delaware and New York, and Appellees (which are limited partnerships) are citizens of several states, including New York, through the citizenship of the limited partners. CR0010–15.
[12] CR1049.

3

motion to dismiss, Appellants argued that they could enforce the forum-selection clause—despite not being signatories to the Partnership Agreement—because the forum-selection clause "is undeniably broad and indisputably encompasses Plaintiffs' claims" and "must be enforced."[13] Appellants further argued that claims against the non-signatory Appellants fall "within the scope of the forum-selection clause based on the plain meaning of the provision."[14]

The Dallas court granted Appellants' motion to dismiss.[15] In response to the court's decision, Appellees re-filed the same action in the United States District Court for the Northern District of Texas. Appellees added Blackstone Inc. executive Angelo Acconcia as a defendant, but otherwise all claims and causes of action remained the same.[16] The federal district court *sua sponte* noted that it appeared to lack subject matter jurisdiction and that "a federal court's subject matter jurisdiction cannot be expanded upon agreement of the parties."[17] The court provided both parties an opportunity to respond. No Appellants (or any other

---

[13] CR0007.
[14] CR0007; CR0182.
[15] CR1049.
[16] CR1050.
[17] CR0008; CR0194.

Defendants) responded to the court's order or provided any evidence or information that could establish subject matter jurisdiction.[18] The federal district court dismissed the federal action on July 14, 2023.[19]

Appellees re-filed the same action in Dallas county on July 31, 2023, again with the same claims and causes of action against Appellants. This time, Appellants did enter special appearances.[20] The other Defendants, including Appellants' subsidiary BPP HoldCo LLC, filed an unopposed motion to transfer to the 298th Judicial District, where the Original Action had been pending.[21] The transferring Defendants argued that the action "alleg[es] the same claims against the same parties arising out of the same transaction as the First Action that the 298th District Court previously dismissed," noting that "many of the allegations in the instant action are word-for-word verbatim [] in the First Action."[22] The 298th District Court later accepted the transfer but did not take any further action on the case.

In an effort to increase efficiency, Appellees filed an unopposed

---

[18] CR0008.
[19] CR0009.
[20] CR0009.
[21] CR1050.
[22] CR1051.

Notice of Removal to the Business Court on September 27, 2024.[23] After the Business Court raised the question of whether it had jurisdiction over removals of actions filed before September 1, 2024, the parties agreed to dismiss the removed action without prejudice so that Appellees could re-file it in the Business Court in the first instance.[24] The parties entered into a Rule 11 agreement providing that all discovery and pleadings from the Dallas action would be moved over to the Business Court.[25]

Appellees filed the instant lawsuit on October 25, 2024 (the "Business Court Action").[26] In an order dated January 17, 2025, and an Opinion and Order dated February 10, 2025, the Business Court denied Appellants' special appearances. The Business Court concluded that the Business Court Action was "substantially identical" to the Original Action in which Appellees consented to personal jurisdiction:

> This Original Petition is substantially identical to the petition in the Third Action that the parties previously tried to remove here, which the nonspecially appearing defendants had in turn stated "alleg[ed] the same claims against the same parties arising out of the same transaction as the First Action." Accordingly, the active pleading here asserts the same causes of action arising out of the

---

[23] CR1051.
[24] CR1050.
[25] CR0010.
[26] CR1052.

6

same transaction as the First Action against the same Blackstone Defendants.[27]

The Business Court noted that "personal jurisdiction is a 'waivable right,'" so that once a party consents to jurisdiction, "the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas."[28] The Business Court found that Appellants had entered a general appearance in the Original Action "by seeking affirmative action from the court and filing an answer without filing special appearances."[29]

The Business Court then turned to the question of whether Appellants consented to jurisdiction in the Business Court Action by failing to file special appearances in the Original Action. The Court found that Appellants "voluntarily appeared and chose to litigate claims arising from the Callon transaction" in Texas, and that the Business Court Action was "essentially the same action" as the Original Action.[30] The Business Court thus held that Appellants' general appearance in the

---

[27] CR1052.

[28] CR1066–67 (quoting *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.— Dallas 2010, no pet.).

[29] CR1067.

[30] CR1071; CR1075.

7

Original Action "waived their right to object to personal jurisdiction here."[31]

## Argument

The Business Court properly determined that Appellants are subject to personal jurisdiction in Texas for at least three reasons. First, Appellants consented to personal jurisdiction by filing answers and moving to dismiss—*without filing special appearances*—in a Dallas court in the Original Action, which involved the exact same claims at issue here. Second, Appellants are estopped from now arguing that a Texas forum-selection clause does not apply to them after successfully arguing to the Dallas court that Appellants are subject to that same Texas forum-selection clause, which confers personal jurisdiction in Texas. Third, Appellants' participation in the sale of the Texas oil assets of a Texas company to another Texas company—and receipt of hundreds of millions of dollars of shares from that sale—is sufficient to confer personal jurisdiction in this state. This Court should affirm the Business Court's thorough and well-reasoned Opinion.

---

[31] CR1075.

First, Appellants consented to personal jurisdiction by filing an answer and moving to dismiss in the Original Action without filing special appearances. The Original Action involved the *exact same claims* against Appellants—as the Business Court concluded, "the active pleading here asserts the same causes of action arising out of the same transaction as the First Action against the same Blackstone Defendants."[32] The Business Court went so far as to call them "virtually identical."[33] And Appellants' subsidiary BPP HoldCo LLC agrees. In a motion to transfer, BPP HoldCo LLC and other Defendants argued that the second petition "alleg[es] the same claims against the same parties arising out of the same transaction as the First Action," noting that "many of the allegations in the instant action are word-for-word verbatim."[34] It is black-letter law that a party waives its jurisdictional challenge by appearing without filing a special appearance, as Appellants did here.

Second, Appellants are estopped from now arguing that the Texas courts lack personal jurisdiction after previously successfully arguing the

---

[32] CR1052.
[33] CR1078.
[34] CR1051.

opposite. Since Appellants previously asked a Texas court for, and received, affirmative relief in another stage of this case, the doctrine of judicial estoppel prevents Appellants from taking the opposite position to their advantage. Appellants asked the Dallas court to dismiss the Original Action based on their argument that the forum-selection clause in the Partnership Agreement at issue *applied to each of the Appellants*. Appellants do not—and cannot—contest that the applicability of a Texas forum-selection clause is sufficient to confer personal jurisdiction in Texas, and the Dallas court granted Appellants' motion to dismiss. But now, after successfully arguing that the forum-selection clause applies to them, Appellants now argue the exact opposite and ask this Court to find that the forum-selection clause actually does not apply to them. After receiving affirmative relief based on the applicability of the forum-selection clause, Appellants are estopped from reversing their position.

Third, this Court should affirm the Business Court's opinion on the alternative basis that Appellants' significant contacts with Texas are sufficient to confer jurisdiction on their own. Appellants' direct involvement in the sale of the Texas oil assets of a Texas company to another Texas company confers jurisdiction on its own. The record

demonstrates that each Appellant invested in the Texas partnership and/or received hundreds of millions of dollars from the sale of real Texas assets. That surpasses the threshold for minimum contacts with the state of Texas related to this dispute.

The courts of Texas have personal jurisdiction over Appellants, and this Court should affirm.

## I. The Business Court Properly Applied Rule 120a to Evaluate Appellants' Consent to Jurisdiction

In a 34-page Opinion, the Business Court properly considered the text of Tex. R. Civ. P. 120a and applicable precedent to conclude that Appellants waived any personal jurisdiction challenges to the Business Court Action. The text of Rule 120a refers to "an entire proceeding," which incorporates the Business Court Action here. Appellants plainly consented to the jurisdiction of the courts of Texas by filing answers and moving to dismiss. Appellants now try to argue that their waiver was somehow reversed by the dismissal of the Original Action, or that public policy counsels in favor of permitting Appellants to now evade the jurisdiction of Texas courts after choosing to willingly participate in Texas proceedings before. Both arguments fail.

A. The plain terms of Rule 120a include predecessor proceedings in the same dispute.

Rule 120a, which refers to an "entire proceeding," includes substantially identical actions that include the *same claims* against the *same parties*. Tex. R. Civ. P. 120a provides that a party may enter a special appearance "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State." The special appearance "may be made *as to an entire proceeding* or as to any severable claim involved therein." (emphasis added).

Here, "an entire proceeding" refers to both the Original Action and the Business Court Action. As the Business Court found, the petitions in the Original Action and the Business Court Action are "virtually identical"—they involve the same claims against Appellants based on the same facts.[35] The changes in venue between courts in Texas—originally due to Appellants' insistence on proceeding in federal court despite the clear lack of subject matter jurisdiction—does not change the fact that

---

[35] CR1052; CR1078.

12

the Original Action and the Business Court Action are part of the same proceeding. The Business Court correctly determined that "[b]ut for the cause number and the particular court, this action is essentially the same action as the first one filed on December 12, 2022 . . . in which Blackstone Defendants made a general appearance."[36] The Original Action and the Business Court Action are so similar that Appellants do not even *attempt* to point out a single difference that could possibly affect their consent to jurisdiction.

The Business Court is correct that *Massachusetts Bay Company v. Adkins* demonstrates that "an entire proceeding" is not limited to one specific cause number.[37] *See* 615 S.W.3d 580 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see also Rush v. Barrios*, 56 S.W.3d 88, 104 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). In *Massachusetts Bay*, a defendant filed an answer in an underlying Jefferson County personal injury case without filing a special appearance. The case was transferred to an MDL court where the defendant first attempted to contest personal jurisdiction.[38]

---

[36] CR1075.

[37] CR1071.

[38] CR1072 (citing 615 SW.3d at 592).

The First District held that the underlying action and the MDL action were the same "proceeding" for purposes of Rule 120a, so the defendant waived a jurisdictional challenge by filing an answer in the underlying case. The court noted that "the proceeding in the MDL court in Harris County was simply a continuation of the proceeding in Jefferson County, albeit in a different court in a different county." 615 S.W.3d at 599. The same is true here—the Business Court Action is "simply a continuation of the proceeding" in Dallas county in the Original Action.

Appellants' attempt to narrow *Massachusetts Bay* is unfounded. Appellants claim that *Massachusetts Bay* applies only to cases in which a cause number is directly "transferred or removed" to another court in Texas, and argue that here the Business Court Action was "directly filed" in the Business Court.[39] But the *Massachusetts Bay* court concluded more generally that "[t]he purpose of a special appearance, however, is to contest the ability of all courts in the forum state—not a particular district court—to exercise personal jurisdiction over a defendant," so "[w]hat is relevant is that, by filing its answer, unconditioned by a special

---

[39] Appellants' Br. at 19.

appearance, Massachusetts Bay acknowledged that the case was properly pending before *a Texas court*." *Id*. at 599–600. That same analysis should govern here. Appellants "acknowledged that the case was properly pending before *a Texas court*" by filing answers and moving to dismiss in the Original Action. A new cause number, or an agreed-upon procedural re-filing in the Business Court, does not change that Appellants agreed that the courts of Texas have personal jurisdiction over Appellants with respect to this dispute.

Appellants' statutory construction argument similarly fails. Appellants contend that because Rule 120a provides that "[a] special appearance may be made as to an entire proceeding or as to any severable claim involved therein," the use of "or" limits "entire proceeding" to one specific cause number.[40] But Appellants have not pointed to *any authority* holding that Rule 120a's reference to an "entire proceeding" is limited to one specific cause number.

Appellants further do not address the fact that, if the Legislature intended to restrict Rule 120a to a specific cause number, the Legislature could have explicitly done so—for example, by using the term "cause,"

---

[40] Appellants' Br. at 17.

15

"cause number," or another term that would have more specifically referenced only one particular cause number in a proceeding. Appellants ask this Court to disregard the most reasonable reading of the statute: that "proceeding" does not mean only a specific cause number.[41] *See, e.g., Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 327 (Tex. 2017) ("If an undefined word used in a statute has multiple and broad definitions, we presume—unless there is clear statutory language to the contrary—that the Legislature intended it to have equally broad applicability."); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

B. <u>Appellants waived their challenge to personal jurisdiction when they filed answers and moved to dismiss in the Original Action without entering special appearances.</u>

Appellants consented to personal jurisdiction in Texas for purposes of this dispute when they failed to file special appearances and proceeded

---

[41] While the Texas Rules of Civil Procedure are promulgated by the Texas Supreme Court and are not embodied in a statute, the Supreme Court has instructed that "[w]hen we analyze Texas's procedural rules, we apply the same rules of construction that govern the interpretation of statutes." *In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 569 (Tex. 2015).

to file answers and a motion to dismiss in the Original Action. Rule 120a provides that a special appearance "shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading, or motion." The rule states that "[e]very appearance, prior to judgment, not in compliance with this rule is a general appearance." It is black-letter law that a party waives any jurisdictional challenge by entering a pleading such as an answer without filing a special appearance. *See Nationwide Distribution Services, Inc. v. Jones*, 496 S.W.3d 221, 224 (Tex. App.— Houston [1st Dist.] 2016, no pet.) ("A defendant that does not strictly comply with the procedural requirements of Rule 120a, including the due-order-of-pleading and due-order-of-hearing requirements, waives its jurisdictional challenge and enters a general appearance."); *Rodriguez v. Marcus*, 564 S.W.3d 216, 219 (Tex. App.—El Paso 2018, no pet.) (same).[42]

Notably, the Texas Supreme Court has broadly framed the ways in which a party may consent to the jurisdiction of the Texas courts. A party waives a jurisdictional challenge and enters a general appearance "when it (1) invokes the judgment of the court on any question other than the

---

[42] As the Business Court explained at CR1066, "personal jurisdiction is a 'waivable right' and [a defendant] may give 'express or implied consent to the personal jurisdiction of the court.'" *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.— Dallas 2010, no pet.) (quoting *Burger King Corp.*, 471 U.S. at 473 n.14).

17

court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004). Here, Appellants "recognized by [their] acts that an action is properly pending" in Texas by answering in the Original Action. Appellants further sought "affirmative action from the court" by invoking the federal forum-selection clause in their favor, all without contesting personal jurisdiction or filing a special appearance.

Appellants' reliance on *Waterman Steamship Corp. v. Ruiz* is misplaced. *See* 355 S.W.3d 387, 400 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Appellants' alterations to the quotation at note 45 obscure the fact that the two cases at issue in *Waterman Steamship*—the Hicks case and the Ruiz case—involved *two different plaintiffs.*[43] In addition to the first and second actions involving two different plaintiffs, the first (different) plaintiff had also voluntarily dismissed its *original* action. The court based its waiver finding on the fact that "any waiver in the Hicks case was extinguished by the nonsuit and cannot operate as a basis for denying Waterman's and Maersk's special appearances in the Ruiz case."

---

[43] Appellants' Br. at 22.

18

*See* 355 S.W.3d at 399. There are no such distinctions here, where the Original Action and the Business Court action involve the same plaintiffs and the exact same claims against Appellants.

*Ford Motor Co. v. Cejas*, which involved a *forum non conveniens* dismissal in favor of the courts of Mexico followed by a separate action in Mexico, is also distinguishable. *See* No. 09-16-00280-CV, 2018 WL 1003791, at *5 (Tex. App.—Beaumont Feb. 22, 2018, no pet.). In *Ford Motor*, an MDL dismissed an individual personal injury suit based on *forum non conveniens* in favor of the courts of Mexico. When the plaintiff re-filed seven years later in Texas, the court found that the defendants had not waived a jurisdictional challenge. *Id*. at *5. In that case, however, the MDL court's *forum non conveniens* order contained a specific "return jurisdiction clause" regarding how the case would proceed if plaintiff re-filed in Texas: "If Plaintiffs invoke this return jurisdiction clause and re-file in the State of Texas . . . this Court shall at that time have jurisdiction to determine whether the conditions for invoking the return jurisdiction clause have been met." *Id*. The court thus explicitly contemplated re-evaluating the new action on jurisdictional grounds, including based on the status of the case proceeding in Mexico. *Id*. at *1. The court also did

19

not observe or discuss potential similarities between the original cause of action and the Texas action seven years later. Here, however, there has been a continuous proceeding *within Texas* since December 2022, with "virtually identical" causes of action throughout.

## C. The dismissal of the Dallas proceeding does not reverse Appellants' consent to personal jurisdiction in Texas.

The Dallas court's dismissal of the Original Action based on Appellants' invocation of the federal forum-selection clause does not reverse Appellants' consent to personal jurisdiction in Texas. Appellants cite no authority for their sweeping (and incorrect) proposition that "a dismissal without prejudice terminates the effect of any prior filings."[44] There are numerous examples to the contrary. For example, "the voluntary withdrawal or dismissal of claims from an earlier suit *will not* preclude the operation of res judicata to bar their assertion in a subsequent suit, even where such claims are dismissed without prejudice." *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 752 (Tex. App.—San Antonio 1998, no pet.) (emphasis added). Parties may also be judicially estopped from taking a contrary position in a later action after

---

[44] Appellants' Br. at 24.

successfully obtaining dismissal based on their previous representations to the court. *See, e.g., George Fleming & Fleming & Associates, L.L.P. v. Wilson*, 694 S.W.3d 186, 194 (Tex. 2024), *reh'g denied* (Aug. 30, 2024).

*Rush v. Barrios*, in which the Fourteenth District found that a defendants' appearance in a dismissed suit waived a jurisdictional challenge in a later suit, is instructive. 56 S.W.3d 88, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Appellant, a lawyer, filed a plea in intervention in the products liability suit of a previous client, seeking one-third of any settlement amount awarded to the client. *Id.* at *104. The lawyer appeared in that suit in Texas without filing a special appearance and later dismissed the plea in intervention without prejudice. *Id.* After settling the products liability suit, the former client sued the lawyer in a declaratory judgment action to determine the allocation of attorneys' fees. *Id.* The lawyer then entered a special appearance challenging jurisdiction in Texas.

The Fourteenth District held that the lawyer waived any challenge to personal jurisdiction in Texas based on his general appearance in the prior products liability suit—even though the prior plea in intervention was dismissed without prejudice and all of the events occurred in a totally

different action. The court noted that the lawyer "did not enter a special appearance in the underlying suit, but waited until this declaratory judgment was filed to file a special appearance." *Id*. Without filing a special appearance, the lawyer sought "to invoke the authority of the court" by filing a plea in intervention, and thus "waived any objection to personal jurisdiction" in the later suit. *Id*. at *104–05. That waiver applied even though the plea in intervention was dismissed without prejudice. The same is true here—the Dallas court's dismissal of the Original Action due to Appellants' invocation of the federal forum-selection clause does not alter the fact that Appellants consented to jurisdiction by answering and moving to dismiss, which applies to the continuation of the proceeding in the Business Court Action.

D. <u>Public policy favors preventing litigants who consented to jurisdiction in the same dispute from later evading the jurisdiction of Texas courts.</u>

Appellants claim that public policy favors reversal because purportedly (1) "the business court's opinion was not clear about the degree of 'relatedness' needed to establish consent" and (2) the court did not set a specific standard for the time between cases that can lead to a

22

finding that the cases are sufficiently related.[45] The Business Court's decision does not contain either alleged issue, and policy considerations—to the extent this Court considers them—strongly support finding jurisdiction here.

First, Appellants take issue with the fact that, in resolving the dispute before it, the Business Court purportedly "did not detail whether the parties and causes of action must be *identical* between the earlier and later cases" in all situations.[46] But any such determination of a broader rule was unnecessary to the Business Court's resolution of the specific facts of this case. The Business Court found that the Original Action and the Business Court Action were "virtually identical."[47] As such, there was no need for the Business Court to consider whether the parties and causes of actions must be identical in *all* circumstances.[48]

---

[45] Appellants' Br. at 25–26.

[46] Appellants' Br. at 25–26.

[47] CR1078.

[48] In fact, such a broad resolution—creating a rule applicable to other parties when unnecessary to the resolution of the dispute before the court—would have exceeded the proper scope of the Business Court's authority. *See, e.g.*, *In re Estate of Washington*, 262 S.W.3d 903, 905 (Tex. App.—Texarkana 2008, no pet.) ("We are prohibited from issuing an advisory opinion, the distinctive feature of which is that it decides an abstract question of law without binding the parties . . . Thus, we emphasize that our decision is based solely on the appeal before us."); *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC*, 381 S.W.3d 465, 466 (Tex. 2012) (J. Wainwright and J. Johnson, concurring) ("I also believe that in providing guidance we should take care not to issue pronouncements exceeding the scope of the facts in

Second, Appellants criticize the Business Court for not setting "guidelines for how close in time the pending case must be to the 'consent' case to affect a waiver of personal jurisdiction."[49] But the same issue applies—how close in time a different, theoretical pending case must be to the original case to constitute consent is a case-specific inquiry that was not before the Business Court. Instead, the Business Court evaluated the particular litigation history in this case, including the intertwined nature of the relevant actions, and concluded that Appellants' consent in the Original Action applied with equal force to the Business Court Action.

Finally, Appellants then invoke "policy considerations" to support their argument, but any consideration of "policy considerations" strongly favors Appellants' position. The courts of Texas have a specific interest in ensuring that a party is subject to jurisdiction in Texas when (1) it consented to personal jurisdiction in a "virtually identical" matter; (2) it successfully argues it is subject to a Texas forum-selection clause and Texas choice-of-law provision; and (3) the dispute revolves around that

---

dispute.") (quoting the Supreme Court's conclusion in *Upjohn Co. v. U.S.*, 449 U.S. 383, 386 (1981) that it "decline[s] to lay down a broad rule or series of rules to govern all conceivable future questions").

[49] Appellants' Br. at 26.

party's gain of hundreds of millions of dollars from the sale of the Texas-based real oil assets of one Texas company to another Texas company. *See, e.g., Winnsboro Auto Ventures, LLC v. Santander Consumer USA, Inc.*, No. 05-17-00895-CV, 2018 WL 1870771, at \*7 (Tex. App.—Dallas Apr. 19, 2018, no pet.) ("Texas has a manifest interest in ensuring 'a convenient forum for redressing injuries inflicted by out-of-state actors.' . . . Furthermore, Texas has an interest in adjudicating the dispute because the laws of Texas will apply to the contract's interpretation.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)).

## II. Appellants are Estopped from Reversing their Position on Jurisdiction

The doctrine of judicial estoppel (or quasi-estoppel) prevents Appellants from claiming Texas courts lack jurisdiction after Appellants successfully argued that a Texas forum-selection clause applies to them. "At its most general level, '[j]udicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation.' . . . 'Its essential function is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage.'" *George Fleming & Fleming & Associates, L.L.P. v. Wilson*, 694 S.W.3d 186, 191 (Tex. 2024), *reh'g denied* (Aug. 30, 2024) (citations omitted). In the

25

jurisdictional context, "[e]stoppel is an equitable doctrine which prevents a party from challenging the trial court's jurisdiction because the party's prior conduct is inconsistent with their claim of lack of jurisdiction." *City of San Antonio v. Hardee,* 70 S.W.3d 207, 213 (Tex. App.—San Antonio 2001, no pet.).

In the Original Action, Appellants moved to dismiss based on a Texas federal forum-selection clause, thus necessarily consenting to personal jurisdiction in Texas. Appellants argued that the Texas forum-selection clause *applied to all Appellants* (which were non-signatories to the Partnership Agreement): in their motion to dismiss, Appellants asserted: "The Forum-Selection Clause is Enforceable as to Nonsignatories," and thereby argued that plaintiffs' claims against Appellants "can only rely on the Partnership Agreement, thus *enabling the Affiliated Blackstone Defendants [Appellants] to invoke the forum-selection clause*."[50] It is well-established in Texas that consent to a Texas forum selection clause creates consent to personal jurisdiction in Texas. *See, e.g., Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 792 (Tex. 2005) ("Generally, a forum-selection clause operates as consent

---

[50] CR0299–300 (emphasis added).

26

to jurisdiction in [that] forum."); *W. Techs., Inc. v. Omnivations II, L.L.C.*, 583 S.W.3d 786, 792 (Tex. App.—El Paso 2019, no pet.) ("Agreeing to a forum selection clause naming Texas the forum for litigation waives any objection to lack of personal jurisdiction and makes the party subject to personal jurisdiction in a Texas court."). Appellants "invoke[d] the forum-selection clause" in the Original Action and successfully convinced that court they were subject to the Texas forum selection clause to succeed on their motion to dismiss before that court.

But now, in the Business Court Action, Appellants argue the *exact opposite*. Specifically, Appellants claim in their special appearance that Appellants, as non-parties to the Partnership Agreement, did *not* consent to—and are not bound by—the Texas forum selection clause. Appellants argued that non-signatories "'may be subject to a forum-selection clause' only in limited circumstances," and that Appellants (as non-signatories) "did not consent to the same exclusive jurisdiction" described in the forum selection clause.[51]

Judicial estoppel precludes Appellants from successfully advancing a total and irreconcilable position to now evade the reach of the same

---

[51] CR0244.

Texas courts they previously argued had jurisdiction to grant them relief. As the Supreme Court recently emphasized, "the party to be estopped must have obtained a benefit by making a clear and unambiguous statement that convinced a prior court to adopt a position that contradicts the party's current position. The doctrine applies unless, under the circumstances, the court finds that its application would be unjust or contrary to the doctrine's underlying purposes."[52] *George Fleming*, 694 S.W.3d at 193.

First, Appellants "prevailed" and gained an advantage by "persuad[ing] the court to adopt the party's position and thus grant the relief that the party sought." *Id*. at 191–92. Appellants obtained dismissal of the Original Action by successfully arguing that they could enforce the Texas federal forum-selection clause as nonsignatories and thereby require the case to proceed in the Northern District of Texas. Second, Appellants' statement was "clear and unambiguous": Appellants argued that "The Forum-Selection Clause is Enforceable as to Nonsignatories" and that plaintiffs' claims "enable[ed] the Affiliated

---

[52] Appellants claim that judicial estoppel requires a "sworn" statement. Appellants' Br. at 34. That is incorrect—as the Texas Supreme Court explained in George Fleming, the requirement is only that the statement was "clear and unambiguous," not that it was "sworn." *George Fleming*, 694 S.W.3d at 193.

Blackstone Defendants [Appellants] to invoke the forum-selection clause."[53] Third, Appellants' prior position that they are subject to the forum selection clause, which confers personal jurisdiction in Texas, contradicts their new position that Texas courts lack jurisdiction over Appellants. Finally, the "successful representation" arose "'in another phase' of the same case," not in the immediate action before the court. *Id.* at 192. Appellants are estopped from gaining an advantage in the Business Court Action by now reversing the position they convinced the Court to accept in the Original Action.

## III. The Factual Record Demonstrates Appellants' Substantial Contacts with Texas

Appellants' substantial contacts with Texas provide an alternative basis for Appellants to fall within the jurisdiction of Texas courts regarding the Primexx sale. Appellants invested in a Texas partnership governing the assets of a Texas oil company; exercised control over Appellants' subsidiary that operated the Texas oil company; and received hundreds of millions of dollars from the fire sale of those Texas-based

---

[53] CR0299–300.

29

real oil assets to another Texas-based company. This substantial and intentional availment of Texas confers personal jurisdiction in Texas.

"Texas's long-arm statute 'extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit.'" *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.,* 512 S.W.3d 878, 885 (Tex. 2017) (quoting *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002)). Consequently, once Plaintiffs alleged conduct that falls under the long-arm statute, the exercise of personal jurisdiction complies with due process "if the nonresident defendant has 'minimum contacts' with the state and the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Walden v. Fiore,* 571 U.S. 277, 283 (2014)). The minimum contacts analysis considers whether "(1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 338 (Tex. 2009).

The petition alleges—and the record confirms—that Appellants purposefully availed themselves of conducting business in Texas and

were directly involved with the key facts at issue in this case. Appellants each either (1) invested hundreds of millions of dollars into Primexx in exchange for majority control of the board, which resulted in the forced sale, or (2) received hundreds of millions of dollars in Callon shares as a result of the forced sale of the Texas-based real oil assets of one Texas company to another Texas company. For example, the Partnership Agreement provided that capital for the agreement would be raised through Appellants Blackstone Energy Partners II LP and Blackstone Capital Partners VII LP, which the Partnership Agreement defined as the "Blackstone Investors."[54] The Term Sheet attached as Annex B to the Partnership Agreement refers to Appellant Blackstone Energy Partners II as "Blackstone," and notes that "Blackstone will control the board of managers of the Company" and "will have customary drag-along rights."[55] It is that exercise of control, and the forced exercise of the drag-along right, that is at issue in this dispute. Most Appellants jointly and beneficially owned nearly six million shares of Callon stock after the forced transaction closed.[56] And several Appellants signed regulatory

---

[54] CR0050.
[55] CR0171–73.
[56] CR0469–536.

31

filings related to the Callon sale on behalf of BPP HoldCo LLC, Appellants' subsidiary that operated the investment.[57]

As the Texas Supreme Court described in *Moncrief Oil,* "the United States Supreme Court concluded that forming an enterprise in one state to send payments to a corporation in the forum state was sufficient to confer specific jurisdiction." *Moncrief Oil Intern. Inc. v. OAO Gazprom,* 414 S.W.3d 142, 153 (Tex. 2013) (citing *Burger King,* 471 U.S. at 468, 478). That is precisely what happened here: Appellants invested in a Texas business, orchestrated the sale of the Texas-based real property of that Texas company to another Texas-based company, and accepted hundreds of millions of dollars in proceeds from Texas. Texas courts routinely find that direct involvement in similar Texas-based corporate disputes is sufficient to confer personal jurisdiction. *See, e.g., Glencoe Capital Partners II, L.P. v. Gernsbacher,* 269 S.W.3d 157 (Tex. App.—Fort Worth 2008, no pet.) (holding that non-resident directors making misrepresentations on remote board meetings involving Texas residents was sufficient to confer jurisdiction); *Carlile Bancshares, Inc. v. Armstrong,* No. 02-14-00014-CV, 2014 WL 3891658 (Tex. App.—Fort

---

[57] CR0537–0549.

Worth Aug. 7, 2014, no pet.) (holding that the court had personal jurisdiction over two directors of a Colorado-based company due to those directors' involvement in a merger transaction between the Colorado company and a Texas company).

The exercise of jurisdiction over Appellants, each of which received substantial benefits from purposefully conducting business in Texas, does not offend traditional notions of fair play and substantial justice. Once the minimum contacts requirements are satisfied, it is "rare" for the exercise of personal jurisdiction to fail to comply with the requirement of fair play and substantial justice. *Retamco,* 278 S.W.3d at 341. And black-letter law provides that personal jurisdiction does not require the defendant to have physically set foot in the state of Texas. In *Retamco,* the Texas Supreme Court concluded that "while [the defendant] may not have actually entered the state to purchase this real property, '[j]urisdiction . . . may not be avoided merely because the defendant did not physically enter the forum state.'" 278 S.W.3d at 339 (Tex. 2009). Appellants' substantial availment of the state of Texas to make hundreds of millions of dollars off the sale of Texas-based real oil assets confers personal jurisdiction.

## Conclusion

Because Appellants consented to personal jurisdiction in Texas, are estopped from contesting personal jurisdiction in Texas, and purposefully availed themselves of the benefits of doing business in Texas to make hundreds of millions of dollars from selling the Texas-based real oil assets at issue in this dispute, Appellees respectfully request that this Court affirm the January 17, 2025 and February 10, 2025 Opinions and Orders of the Business Court.

Dated: May 29, 2025

Respectfully submitted,

SUSMAN GODFREY L.L.P.

By: */s/ Stephen Shackelford, Jr.*
Stephen Shackelford, Jr.
State Bar No. 24062998 (TX)
sshackelford@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Marc M. Seltzer
(*pro hac vice forthcoming*)
State Bar No. 54534 (CA)
mseltzer@susmangodfrey.com
Bryan Caforio
(*pro hac vice forthcoming*)
State Bar No. 261265 (CA)

34

bcaforio@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Lindsey Godfrey Eccles
(*pro hac vice forthcoming*)
State Bar No. 33566 (WA)
leccles@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

Sarah Hannigan
(*pro hac vice forthcoming*)
State Bar No. 5961248 (NY)
shannigan@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

***Attorneys for Appellees***

## Certificate of Service

This is to certify that on May 29, 2025, a true and correct copy of the above and foregoing instrument was served on all counsel of record via eFileTexas.

/s/ Stephen Shackelford, Jr.
Stephen Shackelford, Jr.


## Certificate of Compliance

I certify that this Brief complies with the requirements of Tex. R. App. P. 9.4, including Rule 9.4(i)(2). This Brief contains 6,472 words.

/s/ Stephen Shackelford, Jr.
Stephen Shackelford, Jr.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Stephen Shackelford on behalf of Stephen Shackelford
Bar No. 24062998
sshackelford@susmangodfrey.com
Envelope ID: 101411718
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief For Appellees Oral Argument Requested
Status as of 5/30/2025 8:53 AM CST

Associated Case Party: Blackstone Holdings III LP, et al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David S.Coale | | dcoale@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Christopher JSchwegmann | | cschwegmann@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Christopher W.Patton | | cpatton@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Kay Ridenour | | kridenour@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Scott Smoot | | ssmoot@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Kyle A.Gardner | | kgardner@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Kerri Jones | | kjones@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Jessica Cox | | jcox@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Yaman Desai | | ydesai@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Gina Flores | | gflores@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |
| Julie Archuleta | | jarchuleta@lynnllp.com | 5/29/2025 7:05:49 PM | SENT |

Associated Case Party: Primexx Energy Opportunity Fund, LP., et al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bryan Caforio | | bcaforio@susmangodfrey.com | 5/29/2025 7:05:49 PM | SENT |
| Sarah Hannigan | | sHannigan@susmangodfrey.com | 5/29/2025 7:05:49 PM | SENT |
| Lindsey Eccles | | leccles@susmangodfrey.com | 5/29/2025 7:05:49 PM | SENT |
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 5/29/2025 7:05:49 PM | SENT |
| Zack Ewing | | zack.ewing@kirkland.com | 5/29/2025 7:05:49 PM | SENT |
| Roger Cowie | | roger.cowie@troutman.com | 5/29/2025 7:05:49 PM | SENT |
| Taylor Levesque | | Taylor.Levesque@troutman.com | 5/29/2025 7:05:49 PM | SENT |
| Laura Brigham | | laura.brigham@kirkland.com | 5/29/2025 7:05:49 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Stephen Shackelford on behalf of Stephen Shackelford
Bar No. 24062998
sshackelford@susmangodfrey.com
Envelope ID: 101411718
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief For Appellees Oral Argument Requested
Status as of 5/30/2025 8:53 AM CST

Associated Case Party: Primexx Energy Opportunity Fund, LP., et al.

| | | | | |
|---|---|---|---|---|
| Laura Brigham | | laura.brigham@kirkland.com | 5/29/2025 7:05:49 PM | SENT |
| Michelle Williams | | mwilliams@susmangodfrey.com | 5/29/2025 7:05:49 PM | SENT |
| Josephine Wang | | jwang@susmangodfrey.com | 5/29/2025 7:05:49 PM | SENT |
| Stephen Shackelford | | SShackelford@susmangodfrey.com | 5/29/2025 7:05:49 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Theressa Washington | | theressa.washington@troutman.com | 5/29/2025 7:05:49 PM | SENT |